**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **COACH, INC. et al.**, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. AW–11–01239 |
| | * | |
| **FARMERS MARKET & AUCTION** | * | |
| **a/k/a CHARLOTTE HALL FLEA** | * | |
| **MARKET et al.** | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>MEMORANDUM OPINION</u>

Plaintiffs Coach, Inc. and Coach Services, Inc. ("Coach") bring this action against, inter alia, Defendants Farmers Market & Auction a/k/a Charlotte Hall Flea Market ("Farmers Market & Auction") and Benjamin H. Burroughs, Jr. ("Burroughs") (collectively "the Market Defendants"). Plaintiffs assert direct and contributory claims for trademark infringement and counterfeiting, trade dress infringement, false designation of origin and false advertising, trademark dilution, copyright infringement, and unjust enrichment. Pending before the Court is the Market Defendants' Motion to Dismiss or, in the Alternative, Motion to Strike ("Motion to Dismiss"). The Court has reviewed the motions papers and record and finds no hearing necessary. For the reasons articulated below, the Court **DENIES** the Market Defendants' Motion to Dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Third Amended Complaint and assumed to be true. Coach, Inc. is a Maryland corporation with its principle place of business in New York. Doc. No. 33–3 at 2. Coach Services, Inc. is a Maryland corporation with its principle place of

business in Florida. *Id.*[1] Coach manufactures, markets, and sells products such as handbags, wallets, and watches. *Id.* at 4. These products may be purchased from Coach through its stores or website, or from third parties. *Id.* Coach products are recognizable due to the company's use of trademarks, trade dresses, and design elements. *Id.* Coach protects its intellectual property through the use of trademarks, trade dresses, design elements, and copyrights. *Id.* The trademarks and trade dresses at issue have been continuously used and have never been abandoned, and the trademarks and copyrights at issue have been registered with the appropriate government offices. *Id.* at 9–10.[2]

Defendant Farmers Market & Auction is a Maryland corporation with its principal place of business in Maryland. *Id.* at 2. Defendant Burroughs is an individual residing in Mechanicsville, Maryland, and does business as Farmers Market & Auction in Charlotte Hall, Maryland. *Id.* at 3. Although there are several other Defendants, the instant Motion to Dismiss seeks dismissal of the claims against only the Market Defendants.

On or about June 10, 2008, the Farmers Market & Auction site was raided by the St. Mary's County Sheriff's Department. *Id.* at 11. Numerous articles were seized, including a total of more than 600 counterfeit Coach items (e.g., handbags, sunglasses, wallets, shorts, keychains, and jewelry). *Id.* Ten vendors were prosecuted pursuant to this raid, each of whom pleaded guilty to counterfeiting or received deferred sentencing. *Id.* Two years later, on or about June 12, 2010, the same sheriff's department conducted a second raid of the site, during which about fifty counterfeit Coach handbags, wallets, and pairs of shoes were seized. *Id.* Each of the counterfeit

---

[1] Throughout their Third Amended Complaint, both Plaintiff corporations refer to themselves only as "Coach." As they do not differentiate between themselves, the term "Coach" will refer to both companies together.

[2] Trademarks: Reg. No. 3,696,470; 2,626,565; 3,441,761; 2,088,707; 1,070,999. Copyrights: VA0001694571.

items bore at least one registered Coach mark. *Id.* at 11–12. Two vendors were charged with felony trademark counterfeiting. *Id.* at 12.

On or about June 29, 2010, Coach sent the Market Defendants a cease and desist letter, wherein Coach demanded that the Market Defendants halt all allegedly infringing activities. *Id.* at 12. On or about August 9, 2010, Burroughs responded by letter, stating only that Farmers Market & Auction distributes a flier that states "no bootleg . . . merchandise may be sold" and attaching a copy of that flier. *Id.* On or about August 9, 2010, Coach wrote a letter to Burroughs to inform him of its belief that he had a duty to police the flea market, but he never responded. *Id.*

On or about January 15, 2011, a Coach investigator visited the site and witnessed three vendors openly offering for sale products bearing Coach marks. *Id.* The investigator approached one of the booths and observed about twenty handbags bearing Coach marks, one of which the investigator purchased for thirty dollars.[3] *Id.* Additionally, the investigator observed at another booth about twenty-five handbags bearing Coach marks, one of which he purchased for thirty dollars.[4][5] *Id.* at 13. A Coach investigator examined both handbags and determined them to be counterfeit. *Id.* None of these vendors had a license, authority, or permission from Coach to use any of the described marks in connection with the designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of the products. *Id.* at 13–14.

On or about November 5, 2011, a Coach investigator, accompanied by St. Mary's County law enforcement officers, visited the site and observed a vendor offering five items bearing

---

[3] "Op Art" Trademark (Reg. No. 3,696,740); "Heritage Logo" Trademark (Reg. No. 3,441,761); "Coach & Lozenge Design" Trademark (Reg. No. 1,070,999).
[4] "Op Art" Trademark (Reg. No. 3,696,740); "Signature C" Trademark (Reg. No. 2,626,565); "Coach & Tag Design Trademark (Reg. No. 2,088,707); "Coach & Lozenge Design" Trademark (Reg. No. 1,070999).
[5] Coach's motion papers list several trademark numbers incorrectly. We have attempted to list these correctly.

Coach marks. *Id.* The officers seized those items, which were identified by the investigator as counterfeit Coach products. *Id.* None of these vendors had a license, authority, or permission from Coach to use any of the described marks in connection with the designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of the products. *Id.* at 13–14.

Coach alleges the following causes of action against the Market Defendants: (1) contributory trademark counterfeiting under 15 U.S.C. § 1114; (2) contributory trademark infringement under 15 U.S.C. § 1114; (3) contributory trade dress infringement under 15 U.S.C. § 1125(a); (4) contributory false designation of origin and false advertising under 15 U.S.C. § 1125(a); (5) contributory trademark dilution under 17 U.S.C. § 1125(c); and (6) contributory copyright infringement under 17 U.S.C. § 501. *See id.* at 21–29.

Coach filed its original Complaint on May 9, 2011. Doc. No. 1. The Market Defendants filed their Motion to Dismiss on June 17, 2011. Doc. No. 4. In response, Coach filed an Amended Complaint on July 8, 2011. Doc. No. 7. The Market Defendants filed a Second Motion to Dismiss on July 29, 2011. Doc. No. 13. Coach filed its response to the Second Motion to Dismiss on August 19, 2011. Doc. No. 16. The Market Defendants replied on September 6, 2011. Doc. No. 17.

On September 22, 2011, Coach filed a Motion for Leave to File a Second Amended Complaint. Doc. No. 18. This Court granted that Motion on January 5, 2012. Doc. No. 23. The Second Amended Complaint was registered on the same day. Doc. No. 24. The Market Defendants filed a Third Motion to Dismiss on January 26, 2012. Doc. No. 27. On March 12, 2012, after having filed a response to the Third Motion to Dismiss, Coach filed a Motion for Leave to file a Third Amended Complaint. Doc. No. 33. The Court granted that motion on April 2, 2012. Doc. No. 35. Coach and the Market Defendants agree that the Third Motion to Dismiss

(referred to hereinbelow simply as "Motion to Dismiss") applies to the Third Amended Complaint.

## II.      STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

III.    **LEGAL ANALYSIS**

**A. Contributory Trademark Counterfeiting and Infringement**

Coach contends that the Market Defendants are liable for contributory trademark counterfeiting and infringement under the Lanham Act, 15 U.S.C. § 1114, because they knew or should have known of the alleged violations and permitted them to continue. *See* Doc. No. 33–3 at 21–24. The Lanham Act exposes to liability any person who, without authorization,

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(a). Regarding the claims for contributory trademark counterfeiting and infringement, the Market Defendants essentially assert that the Lanham Act does not create a contributory liability regime. *See* Doc. No. 27–1 at 8–9. While they concede that contributory liability for trademark violations has been recognized by courts, including the Supreme Court, they believe that such judicial extensions only pertain to manufacturers or distributors. *See id.* at 9–10 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853–54 (1982)).

This argument reflects a misreading of the applicable case law. *See, e.g.*, *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 160–63 (4th Cir. 2012). In *Rosetta Stone*, the Fourth Circuit overturned the district court and held that genuine issues of material fact precluded summary judgment on Rosetta Stone's contributory trademark infringement claim. *Id.* at 163. The *Rosetta Stone* court characterized Google as a search-engine operator. *See id.* at 150. Manifestly, then, *Rosetta Stone* belies the notion that *Inwood Laboratories* limits contributory trademark infringement liability to manufacturers and distributors.

The contention that contributory liability for trademark violations applies only to manufacturers or distributors is likewise inconsistent with precedent from other circuits. *See*

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999) (holding

that Internet domain name registration company may be sued for contributory trademark

infringement); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264–65 (9th Cir. 1996)

(*Inwood Laboratories* may apply to "swap meet" operators); *Hard Rock Licensing Corp. v.

Concession Servs., Inc.*, 955 F.2d 1143, 1148–49 (7th Cir. 1992) (extending *Inwood

Laboratories* to flea market operator). Accordingly, the Court rejects the Market Defendants'

contention that *Inwood Laboratories*' contributory liability regime attaches to only

manufacturers and distributors.

The Market Defendants insist that, even if *Inwood Laboratories* contributory liability

applies to them, Coach improperly seeks to impose a novel duty to police their place of business

to prevent trademark violations. *See* Doc. No. 27–1 at 12–14. In so arguing, however, the Market

Defendants misconstrue the duty being imposed. Although the Market Defendants correctly note

that there is generally no duty to police a premises for unknown violations, there is nonetheless a

duty to prevent known, ongoing violations. *See, e.g.*, *Inwood*, 456 U.S. at 854–55; *Fonovisa*, 76

F.3d at 264–65; *Hard Rock*, 955 F.2d at 1148–50. In *Hard Rock*, for instance, the Seventh

Circuit held that "willful blindness" would meet the statutory requirement of "actual knowledge

for purposes of the Lanham Act." *See* 955 F.2d at 1149. Similarly, in *Fonovisa*, the Ninth Circuit

indicated that raids and seizures, notifications of violations, and the presence of company

investigators implied awareness. *See* 76 F.3d at 261. *But cf. Perfect 10, Inc. v. Amazon.com, Inc.*,

508 F.3d 1146, 1176 (9th Cir. 2007) (noting that notification of violations does not, without

more, invariably imply "actual knowledge of specific infringing activities" such that a defendant

"could have taken reasonable and feasible steps"); *Fare Deals Ltd. v. World Choice Travel.com*,

180 F. Supp. 2d 678, 691 (D. Md. 2001) (no willful blindness present where the only evidence of

violations was a demand letter alleging violative activities and the defendant did not act to ameliorate the situation within sixteen days).

In this case, Coach has stated a facially plausible claim for contributory trademark violations. As in *Fonovisa,* Coach has alleged prior raids and seizures, a notification of violations, and the sending of company investigators. Furthermore, Coach transmitted this information through its letter to Burroughs, which supports the inference that Burroughs had actual knowledge of the alleged violations. Additionally, after Coach sent the June 2010 letter (to which Burroughs responded in August 2010), it returned to the market in January 2011 and allegedly discovered more violations. In other words, these allegations support the inference that (1) Burroughs had knowledge of Lanham Act violations and (2) failed to take any remedial measures for a half-year period despite the violations' continuance. These allegations distinguish this case from *Fare Deals*, in which the court held that no willful blindness was present when the defendant received notice of potential violations and failed to address them during the following sixteen days. Therefore, although the Market Defendants arguably had no duty to "police" its vendors, the alleged facts make it plausible that the Market Defendants knew or should have known of the violations, or were willfully blind to them. Accordingly, the Market Defendants' Motion to Dismiss Counts X and XI is denied.

## B. Contributory Trade Dress Infringement

Coach also claims the Market Defendants are liable for contributory trade dress infringement under 15 U.S.C. § 1125(a) because they knew or had reason to know of the alleged, ongoing trade dress infringement on their premises and did nothing to prevent it. *See* Doc. No. 33–3 at 24–25. Under the Lanham Act,

> (1) Any person who, on or in connection with any goods or services, or any container for
> goods, uses in commerce any word, term, name, symbol, or device, or any combination

8

thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act.

15 U.S.C. § 1125(a). To analyze whether Coach has stated a facially plausible claim for contributory trade dress infringement, the Court will start by analyzing whether Coach's allegations state a claim for trade dress infringement as to the Vendor Defendants. Then, the Court will consider issues specifically related to the issue of contributory liability.

Trade dress is protected under the Lanham Act. *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999) (citation omitted). "The trade dress of a product consists of its total image and overall appearance, including its size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)). The purpose of trade dress protection is to "secure the owner of the trade dress the goodwill of his or her business and to protect the ability of consumers to distinguish among competing products." 74 Am. Jur. 2d *Trademarks and Tradenames* § 36 (2012) (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010)). To state a claim for trade dress infringement, plaintiffs must show "(1) [their] trade dress is primarily non-functional; (2) the alleged infringement creates a likelihood of confusion; and (3) the trade dress either (a) is inherently distinctive or (b) has acquired secondary meaning." *Id.* "'To establish secondary meaning, a [plaintiff] must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'" *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 449 (4th Cir. 1986) (quoting *Inwood Labs.*, 456 U.S. at 851 n.11).

In this case, Coach adequately alleges the first element by alleging ownership of "a variety of unique and distinctive trade dresses consisting of a combination of one or more features, including sizes, shapes, colors, designs, fabrics, hardware, hangtags, stitching patterns and other non-functional elements comprising the overall look and feel incorporated into Coach products . . . ." Doc. No. 33–3 at 9–10. Coach adequately alleges the second element by alleging that the Vendor Defendants "are engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale products bearing logos and source-identifying indicia and design elements that are studied imitations of the Coach Trademarks, the Coach Trade Dresses, and the Coach Design Elements . . . ." *Id.* at 11. Coach adequate alleges the third element by alleging that "products bearing the Coach Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Coach, and have acquired strong secondary meaning." *Id.* at 4.

Admittedly, Coach has not used the words "trade dress" during its descriptions of the infringing events. However, Coach explicitly included "trade dress" within the collective term "Coach Marks" as defined in the Third Amended Complaint. *See* Doc. No. 33–3 at 4. Therefore, where Coach generally alleges infringement of "Coach Marks," this implies the infringement of trade dress. Regarding the events of January 2011, Coach alleges that the investigator observed at least forty-five handbags "depicting Coach Marks being offered for sale." *See id.* at 12–13. In addition, the two seizures conducted by the Coach investigator resulted in specific identification of the violated marks and the conclusion that the seized products were counterfeits, plausibly justifying the inference that the "total image and overall appearance" of the seized items could have led to confusion.

Furthermore, in its memoranda, Coach notes that it cannot make more specific allegations regarding the other seizures because most of that evidence is still in police custody. *See* Doc. No. 31 at 6–7; No. 33–3 at 11–13; *see also Arista Records LLC v. Doe 3*, 604 F.3d 110, 119–20 (2d Cir. 2010) (citations and internal quotation marks omitted) (noting that plaintiffs may plead based on information and belief when facts are "peculiarly within the possession and control of the defendant"); *see generally Wynn v. Hewlett-Packard Co.*, Civil Action No. 8:11–cv–01287–AW, 2012 WL 113390, at *3 (D. Md. Jan. 12, 2012) (citing *Pegram v. Herdrich*, 530 U.S. 211, 230 & n.10 (2000)) (noting that "the Court may consult plaintiffs' legal briefs to clarify the meaning of ambiguous complaints"). Although the facts here are technically not "peculiarly within the possession and control of the defendant," they are effectively within the peculiar possession and control of local law enforcement officials. Therefore, at this early juncture, Coach's allegations meet the requisite degree of specificity.

As with the Counts discussed above, the Market Defendants maintain that contributory trade dress infringement is not a cognizable cause of action. *See* Doc. No. 27–1 at 16. In addition, they argue that, even if contributory trade dress infringement is actionable, Coach has not alleged sufficient facts to support its claim. *See id.* However, their contentions ignore that several influential courts have recognized contributory trade dress infringement as a cause of action. *See Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir. 1991); *Coach, Inc. v. We Care Trading Co., Inc.*, 67 Fed. App'x 626, 630 (2d Cir. 2002) (upholding a claim of contributory trade dress infringement); *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 84 (S.D.N.Y. 2009) ("[A]ll those who knowingly play a significant role in furthering trade dress infringement are liable as contributing parties.").

In *Bauer*, the Eleventh Circuit examined a case where a lamp company sued former sales representatives for trade dress infringement. In affirming the decision below, the *Bauer* court held that "a person who **knowingly** participates in furthering . . . trade dress infringement is liable as a contributing party." 941 F.2d at 1171 (emphasis added). Although the defendants did not concede knowing participation in the infringing activities, the defendants' contacting of other lamp manufacturers to request the production and delivery of lamps similar to the plaintiff's lamps was construed to equate to "knowing participation" in the resulting trade dress infringement. *See id.* Similarly, in *R.F.M.A.S.*, the Southern District of New York heard a suit alleging that some of the defendant's jewelry pieces "infringed the trade dress of the 'look' of the [plaintiff]'s collection." *See* 619 F. Supp. 2d at 47. Testimony allowing the inference of knowing participation in, or willful blindness to, trade dress infringement was held to suffice as factual support for a claim of contributory trade dress infringement. *See id.* at 84–85.

Coach's argument that contributory trade dress infringement is cognizable stands on firmer footing. While *Bauer* and *R.F.M.A.S.* involved defendants who arguably participated more actively in the infringement, these cases nevertheless propose that knowledge and/or willful blindness may support a claim of contributory trade dress infringement. In this case, as explained in Part III.A, *supra*, Coach has alleged facts plausibly supporting the inference that the Market Defendants were willfully blind of the alleged trademark violations.  In short, the allegations of raids, notification letters, on-site investigations, and inaction despite having had adequate time to take remedial measures justify the inference that Market Defendants were at least aware of wrongdoing yet willfully failed to investigate it. Accordingly, for the foregoing reasons, Coach has stated a cognizable claim for contributory trade dress infringement.

**C. Contributory False Designation of Origin and False Advertising**

Coach further asserts that the Market Defendants are liable for contributory false

designation of origin and false advertising under 15 U.S.C. § 1125(a) because they knew or had

reason to know of the alleged false designation of origin or false advertising on their premises

and did nothing to prevent it. *See* Doc. No. 33–3 at 26. The Market Defendants counter that

contributory false designation of origin and false advertising are cognizable claims under the

Lanham Act or any judicial extensions thereof. *See* Doc. No. 27–1 at 16–17.

Contributory false designation of origin and false advertising are actionable. *See Societe*

*Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 133 (2d Cir. 2004);

(reinstating claim for contributory false advertising after holding that the lower court erred in

dismissing the direct claim for false advertising); *Fare Deals*, 180 F. Supp. 2d at 686–87

(citation omitted) (stating that contributory liability "applies equally to both infringement

provisions of the Lanham Act"); *Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp.

1507, 1511–12 (S.D.N.Y. 1986) (noting that Lanham Act claims sounding in contributory

liability "survive summary judgment so long as the evidence viewed most favorably toward [the

plaintiff] supports a finding" that the defendant alleged to be contributorily liable could have

anticipated the other defendant's wrongdoing).

The Market Defendants also argue that, even if contributory false designation of origin

and false advertising are actionable, Coach has not alleged sufficient facts to state a claim

separate from contributory trademark infringement. To state a claim for false designation of

origin and false advertising under the Lanham Act, Coach "must allege that the defendant in

connection with goods or services . . . used in commerce the plaintiff's mark in a manner likely

to confuse consumers about the source or sponsorship of the goods or services." *Fare Deals*, 180

13

F. Supp. 2d at 683–84 (citations and internal quotation marks omitted). Thus, to state a claim for contributory false designation of origin and false advertising, Coach must allege facts sufficient to support the inference that (1) despite knowing that the Vendor Defendants were using "in commerce the plaintiff's mark in a manner likely to confuse consumers about the source or sponsorship of the goods or services," (2) the Market Defendants continued to supply a means of infringement (3) over which they had means of control or monitoring and which they have actively supported through various promotional efforts. *See id.* at 690–91.

Here, the alleged facts support a plausible inference that the Market Defendants knew that the Vendor Defendants were using "in commerce the plaintiff's mark in a manner likely to confuse consumers about the source or sponsorship of the goods or services." Assuming arguendo the allegations fail to justify the inference that the Market Defendants had actual knowledge of the infringing activity, they nevertheless make it plausible that the Market Defendants had constructive knowledge and/or displayed willful blindness. Coach alleges that the infringing items, adorned with Coach's marks, were easily seen and identified by the Coach investigator during her visit. Additionally, the raids and notification letters plausibly provided notice to the Market Defendants that various vendors were using the market site for infringing activities, such as selling counterfeit items at bargain-basement prices. Thus, Coach has alleged facts from which one can plausibly infer that the Market Defendants knew or should have known of the activities.

Second, the allegations further support the inference that, despite the Market Defendants' actual or constructive knowledge of the ongoing infringing activities, they continued to supply the means of infringement, i.e., the market sites. It may also plausibly be inferred that the Market Defendants had the means of controlling or monitoring the site as they were the owners and

operators of the flea market site. To reiterate, the alleged facts make it plausible to infer that the

Market Defendants had at least constructive knowledge of the false designation of origin or false

advertising and allowed the infringing behavior to continue unabated. Thus, Coach has stated a

cognizable claim for contributory false designation of origin and false advertising under the

Lanham Act. Accordingly, the Court denies the Market Defendants' Motion to Dismiss as to

Count XIII.

**D. Contributory Trademark Dilution**

Coach also argues that the Market Defendants are liable for contributory trademark

dilution under 15 U.S.C. § 1125(c) because they knew or had reason to know of the alleged,

ongoing trademark dilution on their premises and did nothing to prevent it. *See* Doc. No. 33–3 at

27. Although the Market Defendants assert that no appellate court has recognized a cause of

action for contributory trademark dilution, they ignore both an appellate and several federal

district court rulings suggesting that contributory trademark dilution comports with the policy

concerns underlying the Trademark Dilution Act. *See, e.g.*, *Lockheed Martin Corp.*, 194 F.3d at

986 (quoting *Inwood Labs.*, 456 U.S. at 854); *Microsoft Corp. v. Shah*, No. C10–0653 RSM,

2011 WL 108954 at *4 (W.D. Wash. Jan. 12, 2011) (noting "contributory dilution is a tort-like

cause of action which naturally lends itself to the theory of contributory liability" and that "[i]t

would be inconsistent with the Trademark Dilution Act to prohibit a cause of action for

contributory dilution"); *Coach, Inc. v. Gata Corp.*, No. 10–CV–141–LM, 2011 WL 1582954 at

*4–5 (D.N.H. Apr. 26, 2011) (citation omitted) ("There is no logical reason why the doctrine of

contributory infringement should not apply to a claim under the federal antidilution law.");

*Steinway v. Ashley*, No. 01 CV 9703 GEL, 2002 WL 122929, at *2 (S.D.N.Y. Jan. 29, 2002)

("While Defendants are correct that the notion of 'contributory dilution' remains somewhat

novel, the viability of such a claim seems entirely plausible . . . ."); *Kegan v. Apple Computer, Inc.*, No. 95 C 1339, 1996 WL 667808, at *11–12 (N.D. Ill. Nov. 15, 1996).

To support its contributory trademark dilution claim, Coach must show that the Market Defendants either encouraged others to dilute or, as in *Inwood Laboratories*, continued to supply their product "to one whom it knows or has reason to know is engaging in trademark infringement . . . ." *See Lockheed Martin*, 194 F.3d at 986 (quoting *Inwood Labs.*, 456 U.S. at 854); *Kegan*, 1996 WL 667808, at *11–12  ("Apple's motion for summary judgment . . . is denied to the extent that genuine issues of material fact exist as to whether Apple's encouragement of other software developers to create software in the --GUIDE family constitutes contributory dilution . . . ."). As explained above, willful blindness constitutes knowledge under the Lanham Act. *See, e.g.*, *Hard Rock*, 955 F.2d at 1149.

Here, Coach has stated a cognizable claim for contributory trademark dilution. As the preceding analysis evinces, Coach has alleged that the Market Defendants knew or should have known, or were willfully blind to, the violations that allegedly caused the trademark dilution (e.g., raids, seizures, investigations, and the provision of notice). The Court has already discussed the significance of these allegations at length; to do so again is to belabor the point. Notably, moreover, Coach has alleged that the Market Defendants continued to rent space to the alleged violators. This allegation, in context, makes it plausible that the Market Defendants were "encouraging" the violations despite knowledge of their existence. Furthermore, while the Market Defendants call for the application of an "active encouragement" standard, this standard is artificially high and contravenes the logic and spirit of the contributory liability cases set forth above. For these reasons, the Court denies the Market Defendants' Motion to Dismiss as to Count XIV.

**E. Contributory Copyright Infringement**

Lastly, Coach alleges that the Market Defendants are liable for contributory copyright infringement under 15 U.S.C. § 501 because they provided the site and facilities for known infringing activity and failed to take any action to prevent that infringing activity. *See* Doc. No. 33–3 at 27–29. While the Market Defendants recognize that contributory copyright infringement is actionable, they argue that Coach has failed to state a facially plausible direct copyright infringement claim as to the Vendor Defendants. Therefore, as contributory liability is derivative of direct liability, *see, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001), the Market Defendants conclude that they cannot incur contributory copyright infringement liability.

The Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, protects "'original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated.'" *Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010) (quoting 17 U.S.C. § 102(a)). A copyright holder has exclusive rights to use and to authorize the use of his work in five qualified ways: (1) to reproduce the work; (2) to prepare derivative works; (3) to distribute copies of the work to the public; (4) to perform the work publicly; and (5) to display the work publicly. *Advance Magazine Publishers, Inc. v. Leach*, 466 F. Supp. 2d 628, 634 (D. Md. 2006) (internal quotation marks omitted) (citing *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 432–33 (1984)). A person who violates one or more of these five rights incurs liability for copyright infringement. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To bring a claim for copyright infringement, plaintiffs must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Id.*

17

(citation omitted); *see also Keeler Brass Co. v. Cont'l Brass Co.*, 862 F.2d 1063, 1065 (4th Cir. 1988) (citation omitted) ("In essence, a plaintiff must establish two elements in a copyright infringement action: ownership of the copyright by the plaintiff and copying by the defendant.").

In this case, Coach has stated a facially plausible direct copyright infringement claim. Coach adequately alleges the first prong under *Feist* by alleging ownership of a valid registered copyright in its Op Art design, which Coach identifies with registration number VA0001694574. Doc. No. 33–3 at 10. Coach adequately alleges the second *Feist* prong by stating that on "information and belief, the Vendor Defendants had access to and copied the Op Art design . . . ." *Id.* at 28. Moreover, Coach alleges that the Vendor Defendants, without permission, consent, or other authorization from Coach, created and distributed products incorporating elements substantially similar to the copyrightable matter present in the copyrighted Op Art design. *Id.* at 13–14, 28.

The Market Defendants argue that Coach has failed to plead its copyright infringement claim with sufficient specificity under Federal Rule 8(a), contending that there is a heightened pleading requirement for copyright cases. This is a curious argument. Rule 8 is the general rule for pleading, requiring only that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 9, for its part, concerns the pleading of special matters, including specificity.

The Market Defendants do not support their gloss on Rule 8(a) with any controlling caselaw. Instead, they rely on an opinion from the District of Connecticut. *See* Doc. No. 27–1 at 21 (citing *RBC Nice Bearing, Inc. v. Peer Bearing Co.*, No. 06–cv–1380, 2009 WL 3642769, at *3 (D. Conn. Oct. 27, 2009)). Based on this authority, the Market Defendants contend that copyright claims must be alleged with specificity, which includes "(1) which specific works are

the subject of the claim, (2) that the plaintiff owns the copyright in these works, (3) that the copyrights in question have been registered in compliance with the Copyright Act, and (4) by what acts and during what time the defendant infringed the copyright." *Id.*

Coach's copyright infringement claim would be cognizable even if *Peer Bearings'* "heightened" pleading requirement applied to it. First, Coach alleges that its design Op Art is the subject of the claim.[6] Second, Coach alleges that it owns the copyright in this work (copyright registration number VA0001694574). Third, the Third Amended Complaint's allegations support the inference that this copyright has been registered in compliance with the Copyright Act. Fourth, Coach contends that the Vendor Defendants copied the Op Art design and created and distributed infringing products "incorporating elements substantially similar to the copyrightable matter in the Op Art design . . . ." They further allege several instances in which allegedly counterfeit items were observed to bear the Op Art design. Perhaps Coach's generalized allegations of other copyright violations would fail to fulfill the heightened pleading requirement. In any event, the Third Amendment Complaint, at a minimum, suffices with respect to Op Art. Accordingly, the Court denies the Market Defendants' Motion to Dismiss as to Count XV.

## F. Whether, in the Alternative, to Strike All Allegations Regarding Forty-Five Trademarks that Are Supposedly Immaterial and Impertinent

The Market Defendants also argue that forty-five trademarks not alleged to be infringed by the Vendor Defendants should be struck from the Third Amended Complaint. The Court sees no valid reason to do so.

Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure. "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous

---

[6] Coach also alleges that other copyrights were likely infringed, but states that it cannot substantiate this suspicion as it lacks access to the seized items.

matter." Fed. R. Civ. P. 12(f). The Market Defendants claim that, of forty-seven trademarks

identified in the Third Amended Complaint, only two are alleged to have been infringed. *See*

Doc. No. 27–1 at 23. This is not quite true. The Third Amended Complaint alleges infringement

of five specific trademarks. This aside, additional trademarks might have been infringed. Coach

alleges that it does not yet have access to the seized items, and the Market Defendants do not

dispute this allegation. Therefore, at this early stage in the proceedings, it is sensible to permit

the entire list to remain in the Third Amended Complaint. Indeed, even if the Court struck those

trademarks, the Court would likely be inclined to grant leave to amend if discovery revealed

violations of any of those trademarks—a distinct possibility considering Coach's undisputed

allegations regarding seizure of the items. Therefore, the Market Defendants' contention that the

residual forty-two trademarks are immaterial to Coach's claims is unsatisfying.

Moreover, the cases cited by the Market Defendants caution against the granting of

motions to strike. *See Coach, Inc. v. Kmart Corp.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010)

(citations and internal quotation marks omitted) ("Motions to strike are generally disfavored and

will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state

of the facts which could be proved in support of the defense."); *Barry v. EMC Mortgage*, Civ. A.

No. 10–cv–3120–DKC, 2011 WL 4352104, at *4 (D. Md. Sept. 15, 2011) (citations and internal

quotation marks omitted) ("In any context . . . Rule 12(f) motions seek a drastic remedy which is

disfavored by the courts and infrequently granted."). In light of the preceding considerations,

nothing about the inclusion of the residual forty-two trademarks portends prejudice sufficient to

justify the invocation of a drastic remedy.

### III.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Market Defendants' Motion to

Dismiss. A separate Order follows. Additionally, the Court will issue a Scheduling Order.

| August 7, 2012 | /s/ |
|---|---|
| Date | Alexander Williams, Jr. |
| | United States District Judge |